## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Charles E. Fultz, II., first being duly sworn, do hereby aver, depose, and state as follows

**Location to be searched:** This affidavit is submitted in support of an application for a warrant to search the following place:

FOR THE ENTIRE REAL PROPERTY, IMPROVEMENTS, AND PREMISES KNOWN AS 4913 FITCH PLACE, N.E., WASHINGTON, D.C. 20019. THE BUILDING AT THIS ADDRESS IS A THREE-LEVEL ROW HOUSE. THE STREET ADDRESS OF 4913 FITCH PLACE, N.E., IS ON THE SOUTH SIDE OF FITCH PLACE, N.E., AND BEARS THE NUMERALS "4" "9" "1" "3" AT THE ROW HOUSE'S ONLY MAIN, FRONT ENTRANCE.

(1) The Affiant is familiar with the specific location to be searched and will be present to ensure that, if a warrant issues, the correct place is searched. I either know the information set forth in this affidavit from what I have observed, or it has been told to me by other sworn law enforcement officers. In the rest of this affidavit, when first-person pronouns are used, they refer to me.

## I. SUMMARY

(2) In swearing to this affidavit, I respectfully submit that probable cause exists to believe that there are within this row house at 4913 Fitch Place, N.E., papers, records, documents and other evidence of a series of felony violations of the Controlled Substance Act, specifically, of Title 21, United States Code, Sections 841(a)(1). This proscribes illegal possession and distribution of such controlled substances as crack cocaine base. Between March and April 2005, a confidential informant and undercover officer bought half ounce, ounce, one-sixteenth kilogram amounts of crack cocaine base, cocaine powder, or marijuana four times from defendant Norris Robert Martin in the District of Columbia. During this entire time and through this date, this residence has been defendant Martins' residence. In June 2005, a federal grand jury in Washington, D.C., indicted defendant and charged him with a number of felony crimes involving defendant's sales of crack cocaine base in the District of Columbia. A U.S. Magistrate Judge has issued a warrant for defendant's arrest as a result of this indictment.

## II. AFFIANT'S RESUME

(3) I have been a sworn Officer of the Washington, D.C., Metropolitan Police Department (MPD) for nearly than seven years and a police officer for more than a decade. During my career, I have been trained in standard police procedures and anti-drug-enforcement operations. I now work with MPD's Major Narcotics Branch, assigned to the narcotic strike force unit. To carry out my law enforcement duties, I am specially deputized me as a sworn Special Federal Officer with the Federal Bureau of Investigation (FBI).

(4) Before joining the Major Narcotic Branch, among my police assignments, I worked for several years in an MPD tactical unit in the Fifth District. Much of that unit's work involved anti-street crime activities focusing on criminals who had drugs or guns. In the course of my police duties, I have taken part in arresting more than 1000 persons for violating local or Federal drug laws, along with numerous gun-related crimes. I also have

taken part in executing at least 40 search warrants during which police found and seized narcotics, drug paraphernalia, money, and/or firearms. In the course of my police duties, I have interviewed scores of persons arrested in Washington, D.C., on drug charges concerning their unlawful activities. Further, I have spent many hours engaged in secret surveillance of persons involved in illegal narcotic activity. As a result of my training and experience, I have learned how narcotic-traffickers sell drugs and organize their activities.

### III. **DEFENDANT'S INVOLVEMENT IN ILLEGAL ACTIVITY**

(5) Since March 2005, I have been involved in an investigation into the sale of crack cocaine base by a man known as Norris Robert Martin. In this course of this investigation, an MPD confidential informant (CI) and an under cover police officer have bought illegal drugs from Martin a number of times. I recount below some of the main events that took place during this investigation. On June 14, 2005, a federal grand jury indicted defendant Martin on charges that he had unlawfully sold controlled substances to a confidential police informant and undercover officer. I have not recounted below all of the facts known to me through the investigation, but simply those necessary to set forth probable cause to search defendant's residence at 4913 Fitch Place, N.E., Washington, D.C.

(6) On March 11, 2005, the CI telephoned defendant, who has been identified as Norris Robert Martin of 4913 Fitch Place, Washington, D.C., 20019. During the conversation, Martin agreed to sell a ounce of crack cocaine for $1200. Martin told the CI to meet him in the area of 7th and Q Streets, N.W, Washington, D.C. Later that day, at about 4:40 p.m., the CI met Mathews at this corner. Defendant Martin and the CI got into a white Cadillac with District of Columbia tag of BH 3909, Martin driving. I reviewed D.C. motor vehicle records and found this car is registered to defendant Martin. When defendant and the CI drove away from the corner, under cover police officers followed it. Inside the car, the CI gave defendant Martin $1200 in police funds in return for suspected crack cocaine base. The suspected crack later was analysed by the U.S. Drug Enforcement Administration (DEA) Mid-Atlantic laboratory and found to be cocaine base weighting 26.2 grams.

(7) On March 18, 2005, the CI again telephoned defendant Martin about buying $1200 of crack cocaine, and they agreed to meet at 7th and Q Streets, N.W. Once the CI got there, an under cover police officer the CI and saw defendant Martin going into the back seat of the white Cadillac used in the earlier drug sale. It appeared that defendant was retrieving something from this part of the car. The officer then watched defendant Martin meet the CI inside a Chinese carry-out restaurant at 7th and Q Streets, N.W. The CI gave Martin $1200 dollars in police funds and received back a clear baggie with suspected crack cocaine base. The DEA lab found the crack it to be cocaine base weighing 25.8 grams.

(8) On April 1, 2005, the CI telephoned defendant Martin and they agreed to meet near 7th and Q Streets, N.W. The CI and the under cover officer eventually went to the area of $7^{th}$Street and Rhode Island Avenue, N.W., where they made contact with defendant Martin while he was driving his white Cadillac. The CI got into the defendant's car and drove off with out the under cover officer. Other under cover officers followed defendant and the CI in the car. During this ride, Martin and the CI exchanged a clear zip lock with suspected crack cocaine base for $1200 of police money. The CI was driven back to the under cover officer where the CI gave her the suspected crack to a control officer. The off white rock like substance was eventually analysed as cocaine base weighing 25.2 grams.

(9) On April 13, 2005, the CI and defendant Martin agreed to meet at the corner of the 9th Street, N.W., and Rhode Island Avenue, N.W. When they go there, under cover officer and the CI met defendant Martin, who was driving a Nissan Maxima car, with District of Columbia license plates BL 1741. This Nissan Maxima is registered to 4913 Fitch Place, N.E., Washington, D.C. The undercover officer and the CI got into defendant's Maxima car, where defendant exchanged a bag containing suspected crack with the CI and under cover officer for $1200. The suspected crack later was analyzed and found to contain cocaine base weighing 54.5 grams.

## IV. DEFENDANT'S RELATIONSHIP TO PLACE TO BE SEARCHED

(10) Throughout the course of this investigation, I have obtained information from computerized law enforcement records, including the Washington Area Law Enforcement System (WALES) and the National Crime Information Centre (NCIC). As a result of a query conducted March 9, 2005, on District of Columbia license plates BH-3909, I learned that these plates are registered to a 1994 Cadillac-made, four-door car to a Norris Robert Martin, whose address is 4913 Fitch Place Northeast, Washington, D.C., 20019. Further, I conducted a check of defendant Martin's drivers license and learned that he has given the address of 4913 Fitch Place, N.E., Washington, DC., as his residence in the past.

(11) Additionally, throughout the month of June, 2005, I have conducted surveillance of 4913 Fitch Place N.E., Washington D.C., during the daytime. In the course of doing so, I have seen defendant Norris Robert Martins' car parked near the address.

## V. NEXUS BETWEEN PLACE TO BE SEARCHED AND EVIDENCE

(12) Based on my training, experience and participation in narcotic and drug-related investigations and the training and experience of other Officers and Agents with whom I work closely, I know that:

> A. Most drug sellers use their homes as the main place to keep items associated with their business, including drugs they are waiting to sell, records of their business, and money they have made. Although drug sellers are engaged in an unlawful trade, they nevertheless act similarly to small or mid-level retailers, except that they must hide their inventory, income, and associated papers and paraphernalia from competitors, police, and potential robbers. Drug sellers thus like to keep their drugs, money, and business records very close to hand and to hide these things in order to maintain the most effective control over them. Even when drug sellers have a secondary business place for actual sales, such as a stash or safe house, they still typically keep contraband, proceeds, and evidence in their homes.

> B. Like persons who engage in a lawful retail trade, illegal drug sellers make and keep papers that document their activities to keep track of their illegal business. These include records detailing the drugs they have ordered and those they have sold, as well as payments made and received, and money owed or owing. Such papers typically include accounting documents, receipts, notes, ledgers, bank records, and money orders. Drug sellers keep such papers or records close to hand for ready access such as in safe places in their homes.

C. Drug sellers often hide in these same places at home the money or goods they get from selling drugs, so that in such places typically are found large amounts of cash or other valuable items, which are the proceeds of the unlawful business.

D. Persons who sell illegal drugs, particularly cocaine, commonly keep close to hand, particularly at home, things used to process, cut, or cook cocaine, such as such as scales, razors, packaging materials, cutting agents, cooking utensils, microwave ovens, dishes and other containers for converting cocaine into cocaine base

E. Drug sellers typically keep close to hand, particularly at home, books or papers listing the names, addresses, and/or telephone numbers for their associates in the business. Drug sellers often use cell phones, pagers and telephone systems to contact their associates in the narcotic trade.

F. Drug sellers often take photographs of themselves, their associates, and their property and illegal contraband. They usually keep such photos at home.

G. Because the drug trade is illegal, cash-based, and highly profitable, drug sellers are at risk of being robbed or "muscled out" by competitors. Drug dealers associate with criminals, many of whom are prone to violence. Thus many, if not most, drug-dealers regularly carry or have close to hand guns and ammunition. They have these to protect themselves, their drugs, and their money.

## VI. CONCLUSION

(13) Based upon the facts set forth above, I respectfully request that this Court issue a warrant to search the premises at 4913 Fitch Place, N.E., Washington, D.C. 20019, for the items specified in attachment A, and to seize same if found.

X _____
Officer Charles E. Fultz, II
Metropolitan Police Department
Major Narcotics Branch

Sworn to and subscribed before me this   JUN 1 5 2005   day of June 2005.

_____
United States Magistrate Judge

JOHN M. FACCIOLA
U.S. MAGISTRATE JUDGE

## SCHEDULE A

(1) books, records, receipts, notes, ledgers, computers and magnetic storage devices, and other papers, documenting narcotics trafficking, or the identities of persons engaged in narcotics-trafficking;

(2) large sums of cash, or other valuable items such as jewelry or rare coins, representing the proceeds of illegal narcotics trafficking, plus financial documents, records, papers, ledgers, and accounting documents, which are evidence of financial transactions relating to narcotic trafficking and/or the obtaining, transferring, hiding or spending of large sums of money made from drug trafficking.

(3) rental records and real estate documents; indicia of occupancy, residence, and/or ownership of the premises described in the affidavit, but not limited to, utility and telephone bills, addressed envelopes delivered through the mail, and house keys;

(4) papers, tickets, notes, schedules, receipts, and other items relating to domestic travel, in connection with narcotics trafficking; and, in particular, documents, papers, receipts, and bills for the rental of automobiles used to transport drugs;

(5) photographs and video tapes, in particular, photographs of coconspirator and/or assets, cars, and other items of value that identify items representing the proceeds of narcotics trafficking; and,

(6) phone records, electronic beepers and pagers (and numbers contained therein), and cellular phones and records pertaining to their acquisition; and,

(7) safes or safe deposit boxes and their contents to include any narcotics, firearms, or other contraband, and any item set forth in this Schedule A.